UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JIMMIE HOWARD,  **COMPLAINT**

                         *Plaintiff*,  Case No.

         - against-  **JURY TRIAL DEMANDED**

TOWN OF HEMPSTEAD and TOWN OF
HEMPSTEAD HIGHWAY DEPARTMENT,

                        *Defendants*.
----------------------------------------------------------------X

Plaintiff JIMMIE HOWARD ("Howard" or "Plaintiff"), by his attorneys, Tacopina & Seigel, complaining of the defendants named herein (collectively the "Defendants"), alleges as follows:

## INTRODUCTION

1. This Action arises from Defendants Town of Hempstead and Town of Hempstead Highway Department's (collectively referred to herein as "Hempstead") employees, including multiple direct supervisors of Howard, harassing and abusing Howard, who is an African American and has been a Hempstead employee since 2006, based upon his race.

2. Until June of 2014, Howard worked at the Highway Department where in or about October 2007, employee(s) hung nooses from the back of a forklift, one with a tarred stuffed animal hanging from the end, in an obvious attempt to intimidate African American employees.

3. The most recent example of Hempstead harassing Howard was that its employees and/or supervisors hung and displayed a shockingly racist picture of a baby gorilla with handwritten text on the photo indicating that it was Howard's baby picture. Incredibly, this

1

racist picture was hung on the Hempstead's official bulletin board in its office for all employees, staff and others to see. (Pictures of the racist photo are attached hereto as Exhibit A).

4. Shockingly, the baby gorilla picture was posted after another supervisor repeatedly referred to Howard as a "monkey," and other supervisors at the Highway Department continuously discriminated against him based upon his race, such as assigning him the worst truck and assignments (as compared to the trucks and jobs assigned to white employees similarly situated as Howard), writing up Howard for being late when white employees were not written up for such transgressions and punishing Howard for "abandoning" his truck when his white supervisors and/or co-employees intentionally took his truck while Howard was taking a break.

5. Howard's supervisors and co-employees laughed and pointed at the baby gorilla picture and at Howard, abused, belittled and taunted him through the use of that picture, and the supervisors continued such laughter, abuse and harassment, and ignored Howard's concerns, even after Plaintiff complained to them about the picture and the racist abuse.

6. Indeed, upon information and belief, even though Howard complained to his supervisors and the Commissioner of the Highway Department, no employee or supervisor involved with such racial harassment has been disciplined by the Defendants.

7. To make matters worse, when Howard needed time off from work due to the emotional distress caused by the abuse, Defendants docked Howard vacation and sick days for such time off.

8. Thereafter, as a result of the racist abuse, Howard was compelled to transfer to another department to escape such harassment, and was thus constructively discharged by Defendants from the Highway Department.

9. Such intolerable conduct has caused Howard to suffer from, *inter alia*, severe

emotional distress and other emotional injuries.

## JURISDICTION

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the claims alleged herein arise under the laws of the United States.

11. Venue lies in the District pursuant to 28 U.S.C. § 1391(b)(1) because (a) Defendants reside in the County of Nassau, New York, and (b) a substantial part of the events or omissions giving rise to Howard's claims occurred in said county.

## PARTIES

12. Plaintiff is an individual residing in Nassau County, New York. He is an African American.

13. Defendant Town of Hempstead is a town in Nassau County, New York and organized under the laws of the State of New York.

14. Defendant Town of Hempstead Highway Department is a department of Defendant Town of Hempstead, New York and organized under the laws of the State of New York. As noted above, the Town of Hempstead and the Town of Hempstead Highway Department are collectively referred to herein as "Hempstead."

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

15. Howard is an African American who has worked for Hempstead since 2006.

16. From 2006 through May 2014, Howard was employed as an equipment operator for the Highway Department.

17. The racist abuse of Howard at the Highway Department began in or around 2007, when Howard's supervisor at that time, Assistant Foreman, Brian Buttafuoco, continuously yelled at Howard and called him a "Monkey." Buttafuoco also stated to Howard: "If it were up

to me, you people wouldn't be working here," "Italians built this country," "Black people are all lazy," "Black people moving into my neighborhood hurts my neighborhood," and "I won't let my kids watch black movies."

18. When Howard complained of this abuse to Buttafuoco's supervisor, Tony Baddaluco, about these racist comments, Baddaluco merely stated that Howard should understand the comments because Buttafuoco "didn't take medication," and Buttafuoco was not punished.

19. Thereafter, between 2007 and 2014, Howard's white supervisors also assigned Howard the worst equipment and job assignments, such as picking up dead animals and garbage, while other white employees in his department were not assigned these duties. Also, Howard was given a truck without heat and was so deteriorated that it had fumes constantly entering the cab of the vehicle.

20. Between 2007 and 2014, his white supervisors also wrote him up for arriving a few minutes late to work, while other employees who arrived at the same time or later were not written-up. Moreover, if Howard would arrive to work at 7:05 am, his supervisors would start his pay at 8:00 am. At the same time, white employees would arrive at 10:00 am, and still get paid from 7:00 am.

21. On multiple occasions, Howard's white supervisors and/or coworkers took Howard's truck while it was parked offsite when Howard was taking a break near his truck. Howard would then have to walk significant distances back to the garage, and his co-employees and supervisors would laugh at him and write him up for "truck abandonment."

22. Howard complained to his supervisors, reporting the above-described racial discrimination, but they ignored his complaints and no one was punished.

23. Therefore, Howard's supervisors created and implemented a discriminatory policy and mechanism of discrimination against Howard based upon his race.

24. Subsequently, on April 28, 2014, while inside Hempstead's facility located on Market Lane in Levittown, New York, Howard was again the victim of racial abuse and harassment because of his African-American heritage and race.

25. At approximately 2:55 pm, while Howard was waiting in line to clock out from work, he observed numerous Hempstead employees, including his direct supervisors, laughing and staring at him.

26. Glen, an employee of Hempstead, asked Howard, "you didn't see your baby picture on the wall?"

27. As Howard proceeded to the Hempstead official bulletin board where the other employees and supervisors were gathering, right next to the time-clock machine, he discovered a newspaper clipping of a baby gorilla with the caption "Jimmy's baby photo" handwritten across the top.

28. At that time, numerous Hempstead employees, including Howard's direct supervisors, were in line or near the line looking at Howard and laughing at him while pointing at the picture of the baby gorilla.

29. In order to document and report this event, Howard took pictures of the baby gorilla photo and racist caption (Exhibit A hereto), but this only made the other Hempstead employees and supervisors laugh and ridicule him more.

30. At least four of Howard's direct supervisors, Joseph DelMaestro, Joseph Citrano, Patrick Peretta and Jason Lohmann, were mere feet away from the racist photo and caption, witnessed the abuse, and laughed at Howard at that time.

31. Howard asked who hung the photo up, but the employees and supervisors there ignored him and kept laughing.

32. Howard complained and voiced his objections to this abuse at the scene to such supervisors, loudly saying, among other things, "this is my baby picture … really … I'm offended … I'm embarrassed."

33. Another Hempstead employee, Angelo Mayorga, yelled at Howard that there was "another picture" of Howard in the building, which Howard understood to mean that there was another racist and abusive "picture" of Howard in the building.

34. Howard was offended, insulted and embarrassed by the egregious and deplorable actions of Hempstead's employees, including his direct supervisors, and left the facility.

35. However, because the Hempstead employees and supervisors who witnessed and participated in the racial abuse failed to remove the picture, Howard immediately returned inside and removed the picture himself.

36. The above-referenced supervisors clearly heard Howard's complaints, witnessed the racist baby gorilla picture, laughed at Howard, and did nothing in response to Howard's objections. They failed to remove the racist picture and caption, end the abuse, or discipline any employee for such discriminatory conduct.

37. The next morning (April 29, 2014), Howard continued his complaints and objections to Supervisor DelMaestro and expressed to him how upset and offended Howard was about the racial abuse. In response, DelMaestro shrugged it off and even continued to laugh at Howard.

38. Howard again complained about the incident on April 30, 2014, in the office of Highway Department Commissioner Thomas Toscano, while discussing the incident with

Commissioner Toscano, Joseph Spano (Highway Supervisor), and Andrew Snyder (supervisor). At that time, Howard also expressed outrage and his disgust for the Highway Department because of the baby gorilla picture incident, as well as the prior harassment and the 2007 incident when nooses were found dangling from the back of a forklift at a Highway Department garage, one with a tarred stuffed animal hanging from the end.

39.  Even though supervisors witnessed and engaged in the above-described racial abuse, and Howard complained to several supervisors, upon information and belief, no Highway Department employee was terminated or even disciplined for such racist conduct.

40.  The fact that no employee was punished for the abuse only increased the emotional trauma suffered by Howard that was caused by the incident.

41.  Because of the intolerable racial abuse that he suffered on April 28, 2014, even at the hands of his direct supervisors, and because no employee was punished, Howard was compelled to transfer to the Parks Department of Hempstead. Any reasonable person in Howard's position and under such circumstances would have been compelled to transfer out of the Highway Department, where the abuse occurred. Therefore, Howard was constructively discharged from the Highway Department.

42.  The April 28, 2014 incident was a continuation of the discriminatory policy or mechanism created at the Highway Department by Howard's supervisors.

43.  The abuse described above has caused Howard to suffer from severe emotional distress.

44.  Because Howard was so traumatized by the racial abuse, on his doctor's advice, he did not immediately return to work. He returned to work at the Parks Department, not the Highway Department, on or about June 2, 2014.

45.     However, to add insult to injury, Hempstead punished and retaliated against Howard by docking 19.5 sick days and two vacation days from Howard's benefits for the days he took off after the incident, an incident created and fueled by Defendants and Howard's direct supervisors. Therefore, Defendants withholding of Howard's sick and vacation time was done with malice and reckless indifference to Howard's federally protected rights.

## EEOC PROCEEDINGS

46.     On February 17, 2015, Plaintiff filed his EEOC charge by way of his EEOC questionnaire, which contained all the prerequisites of the charge.  Howard Checked Box 2 therein indicating his intent to file such a charge (Exhibit B hereto).

47.     The EEOC issued its Right to Sue Letter and sent same to Howard on July 1, 2016, which Howard received on July 6, 2016 (Exhibit C hereto).

48.     Howard filed this Action within 90 days of receiving such Right to Sue Letter.

## FIRST CLAIM FOR RELIEF

*(Harassment, Hostile Work Environment*

*and Constructive Discharge in Violation of Title VII)*

49.     Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

50.     As set forth in detail above, Defendants discriminated against Howard and harassed him on the basis of his race (African American).

51.     As demonstrated above, the harassment and discrimination suffered by Howard was intentional and malicious, and it constituted a continuing violation.  It was extraordinarily severe and altered the conditions of Howard's working environment because it created an atmosphere of abuse and intimidation wherein Howard's own supervisors participated and

condoned the racist misconduct. Howard was constructively discharged from the Highway Department, and lost sick and vacation days therefrom. Accordingly, such racist abuse transformed Howard's workplace.

52. As demonstrated above, Defendants' harassment and racial discrimination against Howard resulted in his constructive termination from the Highway Department and the loss of 19.5 sick days and two vacation days from Howard's benefits.

53. As described above, Howard's supervisors used their authority to create and continue the discriminatory abusive working environment by laughing at Howard and the baby gorilla picture, and knowing about such harassment by Howard's co-workers but failing to take appropriate remedial action. Said supervisors also failed to even respond to Howard's complaints regarding the baby gorilla picture incident, and the prior incidents of harassment, as set forth above, and instead retaliated against him for his complaints by deducting sick and vacation days from his benefits.

54. As a result, Howard is entitled to compensatory damages for, *inter alia*, emotional distress, suffering, lost sick and vacation days, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law.

55. Because Defendants acted with malice and reckless indifference to Howard's federally protected rights, Howard is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

56. Howard is also entitled to reasonable attorney's fees and expenses to the extent permitted by law.

## SECOND CLAIM FOR RELIEF

*(Harassment, Hostile Work Environment, and Constructive Discharge in Violation of 42 U.S.C.A. § 1981)*

57. Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

58. As set forth in detail above, Defendants discriminated against Howard, harassed him on the basis of his race, created a hostile work environment, constructively discharged Howard from the Highway Department, and withheld vacation and sick time from Howard in violation of 42 U.S.C.A. § 1981.

59. As a result, Howard is entitled to compensatory damages for, *inter alia*, emotional distress, suffering, lost sick and vacation days, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law.

60. Because Defendants acted with malice or reckless indifference to Howard's federally protected rights, Howard is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

61. Howard is also entitled to reasonable attorney's fees and expenses to the extent permitted by law.

## THIRD CLAIM FOR RELIEF

*(Retaliation in Violation of Title VII)*

62. Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

63. As set forth in detail above, Defendants retaliated against Howard for his protected activity in the form of making the above-referenced complaints concerning harassment

and discrimination described herein.

64. Such retaliation took the form of withheld sick and vacation time.

65. As a result, Howard has suffered a loss of benefits in the form of withheld sick and vacation time.

66. Howard is also entitled to compensatory damages for, *inter alia*, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law.

67. Because Defendants acted with malice or reckless indifference to Howard's federally protected rights, Howard is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

68. Howard is also entitled to reasonable attorney's fees and expenses to the extent permitted by law.

## **FOURTH CLAIM FOR RELIEF**

*(Retaliation in Violation of 42 U.S.C.A. § 1981)*

69. Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

70. As set forth in detail above, Defendants retaliated against Howard for his protected activity in the form of making the above-references complaints concerning harassment and discrimination described herein.

71. Such retaliation took the form of withheld sick and vacation time.

72. As a result, Howard has suffered a loss of benefits in the form of withheld sick and vacation time.

73. Howard is also entitled to compensatory damages for, *inter alia*, emotional

11

distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law.

74. Because Defendants acted with malice or reckless indifference to Howard's federally protected rights, Howard is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

75. Howard is also entitled to reasonable attorney's fees and expenses to the extent permitted by law.

**WHEREFORE**, Plaintiff demands Judgment as follows:

A. Plaintiff's actual damages and punitive damages as determined at trial, as well as reasonable attorney's fees and expenses;

B. Costs and Disbursements; and

C. Such other and further relief as deemed just and proper by this Court.

Dated: New York, New York
September 22, 2016

                                           TACOPINA & SEIGEL

                                By: /s/ *Joseph Tacopina*
                                    Joseph Tacopina (JT-2261)
                                    Matthew G. DeOreo (MD-4814)
                                275 Madison Ave., 35 Floor
                                New York, New York 10016
                                Phone: (212) 227-8877
                                Fax: (212) 619-1028
                                jtacopina@tacopinalaw.com
                                mdeoreo@tacopinalaw.com